## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD P. FRIEDMAN, | ) | |
| Plaintiff, | ) | Civil Action No. 09-711 |
| | ) | |
| v. | ) | U.S. District Judge Arthur J. Schwab |
| | ) | U.S. Magistrate Judge Lenihan |
| BETHEL PARK POLICE DEPARTMENT, | ) | |
| POLICE OFFICER ROBERT GARY, | ) | Doc. No. 26 |
| POLICE OFFICER KEITH JONES, | ) | |
| BETHEL PARK POLICE DEPT. SHIFT | ) | |
| COMMANDER, Individually and in their | ) | |
| Official Capacity, | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

The above-captioned matter involves constitutional claims resulting from injuries

sustained by *pro se* Plaintiff, Richard Friedman ("Friedman"), a repeat "driving under the

influence" ("DUI") offender, during his arrest and detention by the Bethel Park Police

Department ("BPPD") and certain identified employees (collectively "Defendants").  For the

reasons set forth herein, this Report recommends that the Defendants' Motion for Summary

Judgment be granted in its entirety as follows: (a) for failure to state a claim as a matter of law as

to Plaintiff's claims for violation of his Eighth and Fourteenth Amendment rights, and his claims

for punitive damages against Defendant BPPD or an individual Defendant in his official capacity,

and (b) for absence of evidence sufficient to raise a material question of fact as to Plaintiff's

claims for violation of his Fourth Amendment rights, municipal liability on the part of

Defendant BPPD, the individual Defendants' entitlement to qualified immunity and their

individual-capacity liability for punitive damages.[1]

## II.  FACTUAL AND PROCEDURAL HISTORY

Plaintiff instituted this action by his *pro se* Complaint of June 3, 2009.  His Complaint,

alleging Defendants' violation of 42 U.S.C. § 1983, avers that:

While driving on the night of February 15, 2009, he was initially signaled to pull over by

Officer Gary Babbin, complied with requests for identifying papers, was instructed to step out of

his car, complied with a search, and was handcuffed.[2]  Defendant Officers Gary and Jones arrived

in another patrol car and escorted Plaintiff to the BPPD and then to Jefferson Hospital, where

staff "looked [him] over" and took a blood sample.  While Plaintiff, handcuffed behind his back

and feet shackled, was transported back to the BPPD, Defendant Gary became "increasingly

hostile" when Plaintiff "exercised his right to remain silent" in response to questions other than,

*e.g.*, his address and height.

---

[1]  Although this *pro se* Plaintiff does not identify his claim as one under the Fourth Amendment in his Complaint, mistakenly citing to other constitutional protections instead, the Court construes his arguments liberally, and addresses the claims presented by Plaintiff's assertions.  See, *e.g.* , Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir.2003) (observing that the Court must liberally construe *pro se* complaints to apply all relevant law)(citing Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir.2002)); Richardson v. United States, 2008 WL 4104681, *5 (D.N.J.  Sept. 4, 2008).

[2]  Although Plaintiff refers to Officer Babbin as Defendant Babbin, see Complaint at ¶¶ 6-9, he is not a named Defendant.

Upon arrival at the BPPD, Officer Gary "literally dragged" Plaintiff by the handcuffs into a holding cell, where Officer Gary then grasped "a fist full of Plaintiff's hair and handcuffs" from behind and "slammed Plaintiff's face into the concrete holding cell wall", causing trauma to his left eye lid, head and nose.   While Plaintiff was on the floor, bleeding profusely about the face, Officer Gary then assaulted him, with closed-fists and boots, with blows to the upper and lower ribs.  Officer Jones stood by in the holding cell, and refused to respond to Plaintiff's pleas for intervention.  Defendants Gary and Jones left Plaintiff in the cell; he "called out" for help/medical attention from the Shift Commander without avail and eventually lost consciousness. Paramedics who attended Plaintiff at the BPPD advised that he required stitches, and Plaintiff was taken to a different medical facility, Upper Saint Clair Hospital, where the Emergency Room physician closed his wound with seven stitches, and Plaintiff also received treatment for visible bruising to his head, nose, and ribs.

In marked contrast to the Plaintiff's allegations, Defendants represent that in the very early hours of February 16, 2009, Officer Gary was dispatched to a report of a blue/green Chevrolet Cavalier that had run off the road and struck a curb, flattening the left front tire.[3] Officer Gary observed Plaintiff's vehicle, which matched the description and was sitting in a commercial parking lot in the vicinity.  The driver stepped out of the vehicle and fell into its side. He smelled of alcohol, had slow/slurred speech, and was unable to provide a driver's license or

---

[3] The Affidavit of Patrolman Keith Jones, who inspected the scene of Plaintiff's arrest, indicates that Plaintiff's vehicle had crossed from the northbound over the southbound lanes of Library Road, into a law firm parking lot, struck the sidewalk in front of the building with its right front tire, and then sideswiped a corner of the building with its bumper, leaving scuff marks. See Affidavit of Patrolman Keith Jones at ¶¶ 9-16.

vehicle registration.  When asked to perform field sobriety tests, the driver uttered an expletive and began to run away, but was taken "to the ground" by Defendant Gary.  The driver was non-compliant and had to be forced into handcuffs by the arresting officers.  The driver, who identified himself as Plaintiff, continued to utter expletives and physical threats to the officers, and to be resistant during transportation to the BPPD.  He resisted removal from the patrol car, and had to be escorted by police officers, using an "arm bar" position, into the police station.  After a physical search, to which he was also verbally and physically resistant, Plaintiff agreed to a blood draw for chemical testing and was transported to Jefferson Hospital, during which time he kicked the rear passenger window of the police cruiser and uttered expletives.

When he was returned to the BPPD for criminal photographs, Plaintiff refused, bent over and covered his face.  Officer Gary tried to straighten Plaintiff for processing by "grabbing the back of [Plaintiff]'s head with [his] left hand and pick[ing] up [Plaintiff's] torso with [his] right hand by grabbing onto the belt around [Plaintiff]'s waist", but both parties lost their "balance during this struggle and fell into the wall face first." Plaintiff's left eyebrow struck the plexiglass cover on the wall, causing a laceration.  Paramedics were called, and Plaintiff was transported to St. Clair Hospital, where he received five (5) stitches.  Affidavit of Patrolman Robert Gary at ¶¶ 49-61.  Defendant was charged with multiple offenses, including DUI, driving while his operating privilege was suspended,[4] and resisting arrest.[5]

_____

[4]  Defendant's Exhibit A(2) indicates that Plaintiff was a habitual DUI offender whose operating license was revoked through March 31, 2023.  See also Defendant's Concise Statement at ¶ 14 (attesting that Plaintiff had six (6) prior convictions of driving under the influence) (attaching exhibits).

[5]  The factual record does not reflect whether and to what extent officers of the BPPD have had prior interaction with Plaintiff, e.g., with regard to other arrests.  Nor does it reflect,

Plaintiff brings claims that, by the conduct averred, Defendants violated his civil rights under 42 U.S.C.A. § 1983 and, in the case of the BPPD, that the municipal department officially/unofficially adopted a "policy, rule, regulation, or ordinance which permits, condones or adopts the actions" of Officers Gary and Jones.

In support of their February 1, 2010 Motion for Summary Judgment, Defendants have filed the Affidavits of Patrolman Robert Gary, Sergeant Blake Babbin, Patrolman Keith Jones, and Patrolman Ian McGuire (the "Affidavits"), together with a Concise Statement of Material Facts ("Defendants' Concise Statement").

In response, and despite this Court's express direction, and grant of two (2) extensions of time, Plaintiff has elected to file nothing. More particularly, on February 2, 2010, this Court ordered that Plaintiff be allowed until March 3, 2010 to respond to Defendants' Motion. Said Order expressly advised Plaintiff that "his response to the motion [could] include opposing or counteraffidavits (executed by the plaintiff or other persons) which have either been sworn to under oath (notarized) or include at the end of the document" a declaration in accordance with 28 U.S.C. § 1746, as well as any "institutional records or other documents" he wished the Court to consider. It further advised Plaintiff that "no affidavit, amended complaint, pretrial narrative or other document containing plaintiff's allegations will be considered when determining the motion for summary judgment unless it has been notarized . . . [or] contains a declaration . . . ."

---

eight months after the filing of the Complaint, any discovery regarding evidence potentially relevant to the adjudication of Plaintiff's claims, such as the medical records of Jefferson Hospital or Saint Clair Hospital (reflecting, *e.g.*, observed injuries and Plaintiff's comportment); any audio or video-tape or other recording(s) made at the time of Plaintiff's stop, arrest, transportations, detention(s) at the BPPD, or hospital treatment(s); or written records.

And finally, the Order expressly cautioned Plaintiff that the Motion would be evaluated "under the procedure standard set forth in Rule 56 of the Federal Rules of Civil Procedure; and that failure to respond may result in entry of judgment" against him.  See Order of February 2, 2010.  When Plaintiff failed to file any response to the Motion by the deadline of March 3, 2010; the Court ordered an extension of time to March 19th.  No Response to Defendants' Motion for Summary Judgment, Concise Statement, or other responsive pleading or controverting evidence has been filed.  Plaintiff has, therefore, adduced no evidence in support of his claim, and the facts set forth in Defendants' Motion papers and Concise Statement are accepted as true, in accordance with the procedural rules.[6]

### III.  <u>STANDARD ON MOTION FOR SUMMARY JUDGMENT</u>

The standard for assessing a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled.  A Court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

---

[6]  See, <i>e.g.</i>, Anderson v. Harron, 2009 WL 2058863, *1 (D.N.J. July 7, 2009) ("Because Plaintiff has not filed any opposition to the summary judgment motion, the Court treats the motion as unopposed.  As this is a motion for summary judgment, the Court will nonetheless consider the merits.  However, since Plaintiff has failed to respond, the Court must take as true all well founded averments of fact made by Defendant. Fed.R.Civ.P. 56(e)(2).") (citations omitted); Purdy v. Pa. Public Utility Comm'n, 2007 WL 3237458, *1 (M.D.Pa. Oct. 30, 2007); Carp v. Internal Revenue Serv., 2002 WL 373448, *2 (D.N.J. Jan. 28, 2002) ("When the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support.").

judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).  The moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact.  The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact. See Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir.1992).

This standard is somewhat relaxed with respect to *pro se* litigants. Where a party is representing himself *pro se,* the complaint is to be construed liberally.  A *pro se* plaintiff, like a represented plaintiff, may not, however, rely solely on his complaint to defeat a summary judgment motion.  See, *e.g.*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); Iseley v. Talaber, 2010 WL 454974, **2 -3 (M.D.Pa. Feb. 3, 2010) (noting that "it is well established that unsubstantiated arguments made

-7-

in briefs are not considered evidence of asserted facts, see Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir.1993), and that allegations made without any evidentiary support may be disregarded. Jones v. UPS, 214 F.3d 402, 407 (3d Cir.2000)).[7]

In order to survive a motion for summary judgment on a §1983 claim, Plaintiff must evidence that the Defendants acted under color of state law, a fact not in dispute *sub judice*, and that Plaintiff was deprived of a federal constitutional right.  When a motion for summary judgment is unopposed, the Court must still assess whether the moving party has met its burden of demonstrating that it is entitled to judgment as a matter of law.  It is appropriate to grant the defendant's motion for summary judgment where (a) the *pro se* plaintiff has received adequate notice that failure to file any opposition may result in a judgment against him, and (b) the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law.  See, *e.g.*, Champion, 76 F.3d at 486 (quoting Fed. R. Civ. P. 56).[8]

---

[7] See also Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir.1990) ("[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment."); Champion v. Artuz, 76 F.3d 483, 485 (2d Cir. 1996); Franklin v. Murphy, 745 F.2d 1221, 1235 (9th Cir. 1984) ("To avoid a summary judgment, [*pro se* plaintiff] may not rely solely on the allegations in his pleadings, he must present some 'significant probative evidence tending to support the complaint.'") (quoting First National Bank v. Cities Service Co., 391 U.S. 253, 290, (1968)).

[8] See also, *e.g.*, Cortez v. Ford, 2008 WL 4186906, *1 (M.D.Pa. Sept. 5, 2008) ("A supporting brief, statement of material facts, and supporting affidavits have been filed . . . . Plaintiff failed to file an appropriate response to the motion. He was afforded an opportunity to respond to the motion for summary judgment in accordance with Federal Rule of Civil Procedure 56 and L .R. 56.1, and was advised that his failure to timely respond would result in the motion being deemed unopposed . . . .  Plaintiff has failed to respond to defendants' motion. Consequently, the motion is deemed unopposed and, for the reasons set forth below, will be granted."); Robinson v. Velasquez, 2010 WL 1010733 (E.D.N.Y. Mar. 15, 2010) (granting Defendant's Motion for Summary Judgment in § 1983 action where *pro se* Plaintiff failed to oppose it, despite receiving notice of the motion and supporting papers, including a notice identifying his obligations, and repeated opportunity, through extensions of time, to respond).

## IV.  <u>ANALYSIS</u>

**A. The Bases for Plaintiff's Constitutional Claims Under 42 U.S.C. § 1983**

    1.  <u>Eighth and Fourteenth Amendment Claims Should Not Stand as a Matter of Law</u>

"Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing  claims [of excessive force]." <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989); <u>see also</u> <u>Abraham v. Raso</u>, 183 F.3d 279, 288 (3d Cir.1999) ("[E]xcessive force in the course of an arrest is properly analyzed under the Fourth Amendment, not under substantive due process.") (citation omitted); <u>Mellott v. Heemer</u>, 161 F.3d 117,121 (3d Cir.1998) (" '[A]ll claims that law enforcement officers have used excessive force ... in the course of a[ ] ... seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard, rather than under a substantive due process approach.' ") (citation omitted), *cert. denied*, 526 U.S. 1160 (1999).[9]

    In addition, the Eighth Amendment applies only to those persons who were incarcerated as a result of a conviction and sentence. <u>Graham v. Connor</u>, supra at 392, n.6.

    Accordingly, summary judgment should be granted on these claims.

---

    [9]  <u>Cf.</u>  <u>Graham</u>, 490 U.S. at 395 (observing that a "seizure" triggering the Fourth Amendment's protections occurs when government actors have "by means of physical force or show of authority, ... in some way restrained the liberty of a citizen").

2. <u>Fourth Amendment Claim Presents No Material Fact Question in Light of Defendant's Supportive Filings and Absence of Any Controverting Evidence</u>

Plaintiff's Complaint and the Defendants' Affidavits contain significantly conflicting versions of the circumstances of Plaintiff's injuries while in the custody of the BPP.  Plaintiff asserts that Officer Gary purposefully assaulted him in Officer Jones' presence, while the Defendants' testimony is that Plaintiff's injuries were accidentally incurred during his resistance to mandatory procedures related to his arrest.  When substantiating evidence has been presented, such "conflicts of credibility should not be resolved on summary judgment 'unless the opponent's evidence is too incredible to be believed by reasonable minds.' " <u>Grove v. City of York</u>, 342 F.Supp.2d 291, 309 (M.D.Pa.2004).[10]

In this case, however, Plaintiff has elected to present no evidence in response to Defendants' Affidavits and Concise Statement attesting that his injuries were accidentally incurred through a reasonable use of force in response to his physical resistance to criminal processing.  Accordingly, no issue of material fact exists regarding whether Plaintiff's injuries were caused by the individual Defendants' excessive use of force, and accordingly this Court should grant summary judgment on this claim.

_____

[10]  In determining the reasonableness of a police officer's conduct, the Court considers, from the contemporaneous perspective of a reasonable officer , "[t]he severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, whether the suspect is actively resisting arrest or attempting to evade arrest by flight, the duration of the police officers' action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.  <u>See</u>, <i>e.g.</i>, <u>Boria v. Bowers</u>, 2009 U.S. Dist. LEXIS 57005, at 27-28 (E.D.Pa. Sept. 22, 2009).

**B. Qualified Immunity**

The individual Defendants attest that summary judgment must be granted in their favor on the basis of qualified immunity.  Qualified or "good faith" immunity is an affirmative defense which has both an "objective" and a "subjective" aspect. The objective element involves a presumptive knowledge of and respect for "basic, unquestioned constitutional rights." The subjective component refers to "permissible intentions."  Qualified immunity is not available to an officer who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . . ."  Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982) (citations omitted).

"Just as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." Curley v. Klem, 298 F.3d 271, 278 (3d Cir.2002), aff'd, 499 F.3d 199 (3d Cir.2007).  It is undisputed that the individual Defendants were acting under the color of law when the incident complained of occurred, but - as noted above - the allegation of Plaintiff's Complaint that Officer Gary committed an intentional assault is entirely without evidentiary support.  Because Defendants have proffered evidence of a reasonable use of force under the conditions attested by Defendants, and uncontroverted by Plaintiff,  there are no material fact questions regarding the circumstances of Plaintiff's injuries and/or Officer Gary's contemporaneous, subjective intent, and summary judgment regarding a qualified immunity defense should be granted.  Similarly, although Office

Jones or the Shift Commander might otherwise  be held liable for conduct initially alleged in

Plaintiff's Complaint, in the absence of any evidentiary support creating a question of material

fact, summary judgment should be granted to both of these Defendants as well.

## C.  Municipal Liability Claim Against the BPPD

Defendants also maintain that Plaintiff has failed to establish any claim against the BPPD

for municipal liability.

Although municipal liability may not be imposed solely on a *respondeat superior* theory,

under Monell v. Dept. of Soc. Servs. of New York, 436 U.S. 658 (1978), a municipality may be

held liable for damages if Plaintiff demonstrates that there was a failure to train, discipline, or

supervise employees and that there was deliberate indifference on the part of policymakers, or the

municipality's policies or customs caused a violation of a person's constitutional rights.  See also

Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000); Simmons v. City of

Philadelphia, 947 F.2d 1042 (3d Cir. 1991).[11]  Plaintiff must also, to impose liability,

demonstrate a plausible nexus of causation between an unlawful policy or custom and the

injuries alleged.  See City of Oklahoma v. Tuttle, 471 U.S. 808, 823 (1985). Plaintiff - having

filed no responsive pleading or contravening evidence - proffers insufficient evidence of either.

---

[11] Cf. Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990) (holding that where plaintiff asserts municipal liability by way of policy or custom "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom").

Plaintiff has neither pursued nor presented any evidence of record that Plaintiff's injuries were the product of, *e.g.*, the BPPD's failure to train its officers, improper policy or custom, or deliberate indifference - as opposed to the officers' response to Plaintiff's resistence to mandatory arrest procedures (or, had any evidence of same been offered, an isolated event attributable to individual officers' personal lack of judgment and/or restraint in dealing with a repeat, and perhaps belligerent, DUI offender).[12]  Accordingly, summary judgment should be granted.

**D.  Punitive Damages**

Lastly, Defendants correctly observe that as a matter of law, punitive damages are not available against either the BPPD or the individual Defendants in their official capacities, and that in order to obtain such damages from the Officer Defendants in their individual capacities, Plaintiff would have to establish an "evil motive or intent, or . . .  reckless or callous indifference to [his] federally protected rights".  <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983).  Plaintiff bears the burden of proving that the individual officers acted recklessly or callously, at minimum.  Again, because Plaintiff has failed to raise an  issue of material fact regarding the Officer Defendants' conduct, Defendants should be granted summary judgment on all claims for punitive damages against any of the individual defendants in their individual capacities as well.

---

[12] An affirmatively-proclaimed policy, or acquiesced-in and sufficiently-widespread custom may lead to liability, but proof of a single incident of unconstitutional activity is not insufficient.

## V. <u>CONCLUSION</u>

For the reasons set forth above, it is respectfully recommended that Defendants' Motion for Summary Judgment be granted in its entirety as follows: (a) for failure to state a claim as a matter of law as to Plaintiff's claims for violation of his Eighth and Fourteenth Amendment rights, and his claims for punitive damages against Defendant BPPD or an individual Defendant in his official capacity, and (b) for absence of evidence sufficient to raise a material question of fact as to Plaintiff's claims for violation of his Fourth Amendment rights, municipal liability on the part of Defendant BPPD, the individual Defendants' entitlement to qualified immunity and their individual-capacity liability for punitive damages.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Dated: April 6, 2010

BY THE COURT:

    /s/ Lisa Pupo Lenihan                        
LISA PUPO LENIHAN
United States Magistrate Judge